DEMOS v. NEW YORK EVENING JOURNAL PUB. CO.

(Supreme Court, Appellate Division, First Department. November 3, 1911.)

Appeal from Trial Term, New York County.

Action by Emanuel J. Demos against the New York Evening Journal Publishing Company. From a judgment for plaintiff, and an order denying a motion for new trial, defendant appeals. Reversed, and new trial ordered, unless plaintiff accepts a reduced verdict, in which event judgment, as modified, is affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Clarence J. Shearn, for appellant.
Abram I. Elkus, for respondent.

PER CURIAM. Judgment and order reversed, and new trial ordered, with costs to appellant to abide event, unless plaintiff stipulate to reduce the amount of the verdict to the sum of $2,000, in which event the judgment, as so reduced, and the order appealed from, are affirmed, without costs. LAUGHLIN, CLARKE, and DOWLING, JJ., concur; LAUGHLIN, J., on the ground of the exclusion of competent evidence as to compensatory damages.

INGRAHAM, P. J. (dissenting). This action was for libel, and the plaintiff has obtained a judgment for $6,000, from which the defendant appeals.

There are six causes of action, growing out of six separate publications, in various editions of the defendant's newspaper, of the article alleged to be libelous. The complaint sets up the libel, which is substantially the same in all the publications, although there are some slight changes. The libel referred to the body of a man that had been found, supposed to have been murdered, and stated that further testimony against the two men now held as suspicious persons was given by the plaintiff, who runs a restaurant at Old Slip; that he was taken before Acting Captain Flannery, of the West Thirty-Seventh Street Police Station, and put through the "third degree"; that rigorous questioning of the plaintiff brought out the statement that these two men had tried to hire him to kill one Mano, offering him a large sum of money if he would put Mano out of the way. The complaint then alleges that by this publication the defendant intended to and did charge that the plaintiff was an intimate associate of criminals

and murderers, and that the plaintiff could be induced by the offer of a large sum of money to commit murder; that the plaintiff had received from the persons then held on the charge of murder an offer of a large sum of money to commit murder; that plaintiff had attempted to conceal said offer, and had concealed his knowledge of any facts relating to the said murder, and did not disclose said offer, or any facts within his knowledge, until taken into physical custody by the police authorities, and compelled by said authorities, by mental and physical torture and severe cross-examinations, to disclose his knowledge of the said facts, thereby attempting to charge and charging the plaintiff with the moral delinquency of concealing knowledge of a murder, failure to perform his duties as a citizen of the state of New York and of the United States of America, and thereby exposing the plaintiff to ridicule, contempt, prejudice, and hatred, which disgraced him in the community, and injured him in his character, credit, reputation, and business as a restaurant keeper. The allegations as to these publications and these innuendoes are repeated in each of the causes of action.

In his charge to the jury the court read to them these various publications, and then read to the jury the charge of the complaint as to the meaning of these charges. The court then charged the jury that these articles published in these various editions of the defendant's newspaper were libelous per se; that the amount of damages the jury could award was from 6 cents to $30,000, the amount claimed by the plaintiff; that it was not necessary, in order for a person to recover general damages for words which are actionable per se, that he should have suffered any actual pecuniary loss, or that the injury resulting to him from the publication should be susceptible of a definite money valuation; that, even though the plaintiff has shown no actual damage, the injury must be presumed; and that for such presumed injury the plaintiff may be allowed damages. The court also charged that the plaintiff was entitled to exemplary damages, if they found that the article was published from bad motives, or if the publication was wanton and reckless on the part of the defendant, and in disregard of the plaintiff's rights. The court then read to the jury an extract from the opinion in Gressman v. Morning Journal Association, 197 N. Y. 480, 90 N. E. 1131. At the end of the charge counsel for the defendant asked the court to charge that it was for the jury to determine whether the publication complained of was libelous, which the court declined, and to which the defendant excepted. The defendant then asked the court to charge that if the jury found that the publication complained of does not have the meaning claimed in plaintiff's innuendo, and that the words in their natural sense are capable of an innocent meaning not defamatory of the plaintiff, they should find a verdict for the defendant. The court declined to charge as requested, and the defendant excepted.

I think the court was in error in charging that this publication was libelous per se, and that it was a question for the jury to determine whether or not the words used were capable of the construction alleged by the plaintiff in his complaint. The dead body of a man had

been found, whom the police had assumed to be that of one Mano, and two persons had been arrested and held on suspicion of being connected with his murder. This newspaper then published a charge that further testimony against these two men was given by the plaintiff. That certainly was not a libel, and could not be the basis of an action. The article further charges that the plaintiff was taken before a police captain and put through the "third degree." It was not alleged that he was arrested, or that he had been charged with any participation in the murder. On the contrary, his relation to it was simply that of a witness. The charge that he was put through the "third degree" might be a charge of illegal or improper acts on the part of the police officers; but I cannot see that it is a charge against a party who was taken before a police captain that the police captain acted towards him illegally or improperly. How or by whom he was taken is not stated, and from the paragraph itself it appears that he was only taken there to be interrogated as to his knowledge of the murder. There was certainly no allegation here that he was the friend or accomplice of criminals, nor was there any statement that he had endeavored to shield the criminals. There was no allegation that he had any knowledge before he was taken before the police captain that these two men had been arrested, that anybody had been killed, or that his evidence was required. So far as appears, the first knowledge that the plaintiff had of the death of the deceased and of the arrest was when he read these articles in the paper, and he so testified upon the trial.

The statement then said that a rigorous questioning of the plaintiff brought out the statement that these two suspects had tried to hire him to kill Mano, offering him a large sum of money if he would put Mano out of the way. I do not think that this is a libel per se. The fact that the plaintiff was rigorously questioned by the police, and that such questioning brought out a statement of the plaintiff that he had been offered a sum of money to commit a crime, negatives the idea that he considered such an offer, or that he had anything to do with it, except that such an offer was made. I cannot see that there was anything in this statement that necessarily tended to disgrace or degrade the plaintiff, or expose him to ridicule, contempt, prejudice, or hatred. It was quite evident that the plaintiff, in preparing his complaint, supposed that an innuendo was necessary to make this article libelous. Every word of this article might have been true and the plaintiff have been guilty of no offense against the law, of no criminal or disgraceful act, and of nothing that would justify any person in entertaining any improper suspicion in relation to him. It may be that, in view of the innuendoes alleged, there was a question for the jury as to whether or not the meaning given to the article by the numerous readers of this defendant's newspaper was such as would tend to injure or disgrace him; but if the article was susceptible of an entirely innocent construction, then it was not libelous without the innuendo, and the question of its meaning should have been left to the jury.

There are other questions presented on this appeal, involving the charge of the court as to exemplary damages and the effect of the mitigating circumstances alleged to have been proved, which it is not necessary to consider, as I think in this case the fundamental error was in charging that this publication was libelous per se.

The judgment and order appealed from should therefore be reversed, and a new trial ordered.

SCOTT, J., concurs.